## SYLVESTER K. PIERCE *vs.* ELIJAH C. TRAVERS & another.

A prescriptive right to raise the water of a mill pond from May to October, so far as can be done without injuring the grass of meadows above the dam, is not established by a habit for more than thirty years, of nailing flash-boards on the dam for short periods between May and October when the rise of the water did not hurt the grass, and by a single instance of refusing at such a time to draw off the water at the request of the owner of a mill above.

TORT by the owner of a mill and dam on a stream in Gardner, against the owners of another mill and dam lower on the

stream, for flowing back water into the plaintiff's wheel-pit. The defendants alleged that they had used the water only as they were of right entitled to do.

At the trial in the superior court, before *Morton*, J., the plaintiff's evidence tended to show that on September 24, 1866, while engaged in taking out one of his mill-wheels and putting in a new one, he was embarrassed by the water rising above the ordinary level, and asked the defendants to let it off, which they at first agreed, but afterwards declined, to do, alleging in refusal, that they were afraid that compliance might injuriously affect their rights; that the next day the water continued to rise, and he went to the defendants' dam, and observed a plank ten or twelve inches wide fastened upon it, which he requested them to remove; but that they declined to remove it, alleging the same reason; and that, in consequence of the unusual height of water so caused, in the plaintiff's wheel-pit, it being in one place as high as three feet, he was put to extra expense and to delay in setting the new wheel.

The evidence tended to show that such a flowing would injure the meadows above the defendants' mill; and it was conceded that raising the water above the defendants' permanent dam would overflow the meadows; but they testified that the particular instance of flowing in question did not injure the grass. And they introduced evidence tending to show that first their father, and afterwards themselves, had occupied their mill and dam ever since 1829; that for more than thirty years at least no change had been made in the height of their permanent dam; that during this period it had been the constant practice to raise the pond to its full height from about October 1 to about May 1, by nailing flash-boards upon the dam; and that " sometimes as late as May 10, but usually about May 1, the water was drawn down to the level of the permanent dam and, as a general thing, kept down until about October 1, but that they were in the habit of nailing on the flash-boards and raising the dam to its full height for short periods between these dates, as they needed the water for the use of their mill, but had not intended to flow the water over the meadows during the summer months so as to

render themselves liable to the owners of the meadows for injury to grass."

Their evidence further tended to show that two or three days before the flowing complained of and before they knew of the plaintiff's intention to change his wheel, they had put on a flash-board and raised the water and were using it for their mill, and that when the plaintiff asked them to let the water off they declined "for the reason that the plaintiff, as they alleged, had reported that they could not guarantee the water the year round, and for the further reason that they were not willing to draw off their water to let the plaintiff put a wheel into their pond;" that afterwards it rained, and a mill owner still higher up the stream suddenly let down water, and thereby the pond was for a short time raised to or near, but not higher than, the level at which it was constantly kept from October to May; "and that seven years only before the flowing in controversy the plaintiff had lowered his wheel-pit and wheels three feet."

There was also testimony in behalf of the plaintiff on the subject of the usage in the months from May to October, tending to show that during that period in each year since the defendants' occupation and for a long time previous, "the water in the pond was uniformly kept at a point so low that the meadows above were not flowed, at which point there would be only about three inches of water in his wheel-pit, since it had been lowered."

The judge ruled that the evidence on the part of the defendants would not constitute a defence to the action, under which ruling a verdict was returned for the plaintiff; and they alleged exceptions.

*C. H. B. Snow,* for the defendants, cited *Smith* v. *Agawam Canal Co.* 2 Allen, 355; *Cowell* v. *Thayer,* 5 Met. 253; *Jackson* v. *Harrington,* 2 Allen, 242; *Ray* v. *Fletcher,* 12 Cush. 200.

*G. F. Hoar,* (*G. A. Torrey* with him,) for the plaintiff, besides cases cited by the defendants, cited *Jones* v. *Percival,* 5 Pick. 484; *Bolivar Manufacturing Co.* v. *Neponset Manufacturing Co.* 16 Pick. 241; *Knapp* v. *Douglas Axe Co.* 13 Allen, 1.

FOSTER, J. The only question presented by these exceptions

is whether the evidence offered by the defendants amounted to a justification of the act complained of; the setting back of water from the defendants' dam below upon the plaintiff's mill-wheel above.   The issue presented by the answer and the evidence was whether the use of the stream actually made by the defendants was a rightful one or not.   The defendants' right to keep up the water from October to May was not in controversy.   They claimed also a prescriptive right to do so by flash-boards from May to October so far as they could without injury to the grass on the meadows.   We need not consider whether such a right as this, to flow one man's mill-wheel when it will not injure another man's grass, is definite enough to be established by prescription.   Assuming it to be so, the evidence falls far short of supporting the claim.   The practice of nailing on flash-boards for short periods, when the water did not hurt the grass, and a single instance of refusing to draw off the water upon the plaintiff's request, are all the circumstances relied upon.   The occasional use of flash-boards in the summer for short periods as an exception to the general rule not to keep them up during that part of the year, does not amount to the open, uninterrupted and adverse use necessary to establish a prescriptive right.   Such acts are merely occasional torts, perhaps not at once resisted only because they were deemed unimportant and did but a trifling injury to the plaintiff.   They would not support a verdict upon the affirmative proposition of fact which the defendants were undertaking to maintain.   And such was the ruling of the judge at the trial.     *Exceptions overruled.*