Koenigs vs. Jung and another.

KOENIGS, Respondent, vs. JUNG and another, Appellants.

*November 8 — December 22, 1888.*

*(1) Boundaries: Line of street: Evidence: Actual location. (2) Ease-*
*ment: Prescriptive right to maintain vault: Ownership of surface.*
*(3) Appeal: Bill of exceptions. (4) Trespass: Damages.*

1. A finding of the jury fixing the line of a street is *held* to be sus-
tained by evidence that the street was originally located on such
line more than thirty years ago and has been maintained thereon
ever since, although a recent survey tends to show that another
line is the true one.

2. One who by prescription acquires the right to maintain a vault or
cellar under another's land does not thereby acquire any right to
the surface over such vault.

3. The refusal of the trial court to submit certain questions or give
certain instructions to the jury will not be reviewed on appeal un-
less such questions and instructions, the rulings thereon, and the
exceptions to such rulings are made part of the record by the bill
of exceptions. Merely filing them with the clerk is insufficient.

4. Defendants having committed a wanton and oppressive trespass by
entering plaintiff's close early on a Sunday morning, with a large
force of men, and pushing their work of digging up the soil with
offensive haste, against the plaintiff's protest, a verdict for $250
damages is *held* not excessive.

APPEAL from the Circuit Court for *Milwaukee* County.
The facts will sufficiently appear from the opinion.

The cause was submitted for the appellants on the brief
of *J. C. Ludwig*, and for the respondent on that of *Stark
& Sutherland*.

To the point that defendants' prescriptive right to main-
tain a vault under plaintiff's lot gave them no right to
claim the lot above it or to exclude plaintiff from its pos-
session, counsel for the respondent cited 1 Washb. Real
Prop. (3d ed.), 12; 3 id. 338–40; *Caldwell v. Fulton*, 31 Pa.
St. 475, 72 Am. Dec. 760, and note; *Hartwell v. Camman*,
10 N. J. Eq. 128, 64 Am. Dec. 448, and note; *McClintock
v. Bryden*, 63 Am. Dec. 100; *Riddle v. Brown*, 56 id. 202;

*Mott v. Palmer*, 1 N. Y. 570; *United States v. Castillero*, 2 Black, 168; *Thorn v. Wilson*, 110 Ind. 325; ·Tiedeman on Real Prop. sec. 621.

COLE, C. J. This is an action for a trespass on real estate. The plaintiff claims to own and to be in possession of the east 122 feet of the south half of lot 1, in block 131, of the First ward of the city of Milwaukee. The lot is claimed to have an east frontage of 30 feet on Milwaukee street, and to extend west at a uniform width from the west line of said street, 122 feet. The *gravamen* of the complaint is that the defendants — who own premises on the north and west — wrongfully entered upon the west end of the plaintiff's lot, took down fences and improvements, dug up the soil, and proceeded to erect a building which extended upon and covered a narrow strip of about $2\frac{3}{4}$ feet wide of the plaintiff's lot. There was much testimony given on both sides as to the ownership and possession of the disputed strip. . The jury found, in answer to questions submitted by the trial court, that the plaintiff owned by deed of conveyance and had been in the continuous possession of this disputed strip for more than thirty years, except as to a cellar which had been dug into the west end of the lot, which was some twelve feet under the surface and had been in possession or occupation of the defendants for twenty years.

The first error assigned is that there was no testimony to support this finding of the jury. We think there is abundant evidence in the case to sustain it. The controversy doubtless had its origin in a disagreement as to the actual line of Milwaukee street on the east of the premises. To support the plaintiff's claim as to its true line, it was proven, or testimony was given tending to show, that there was an actual location of the block, lots, and adjacent streets by the official engineers of the city in 1854, and the

actual grading and improvement of Milwaukee street at that time; its maintenance by the city ever since, which would be most cogent and satisfactory evidence that the actual location of the street, as then made, was the correct one.     The city engineers would be less likely to make a mistake as to lines and boundaries of a public street, when original stakes and monuments could be found, than any survey made more than thirty years afterwards.     Besides, evidence of the continued use and occupation or recognition of the limits of the street by the public and city authorities would be almost conclusive in determining the true line thereof.     The observations made by Mr. Justice ORTON in *Racine v. J. I. Case Plow Co.* 56 Wis. 539, are very pertinent and applicable to the testimony in this case.     He says: " The early settlers who first buy and build upon the lots [in a city] do not attempt to ascertain their lines by a computation of measurements of all the other lots and blocks by the figures on the plat, or stated in the certificate of survey, or the courses and distances marked thereon, or by a resurvey from the starting point of the first one.     But they consult the stakes and other monuments and landmarks, either natural or artificial, fixed and placed at the time of the original survey, if any, and such is generally the case, and such is the method adopted by those who buy and build afterwards if such land-marks still exist; and afterwards, and after such monuments or land-marks have been destroyed or removed, such lines are ascertained by constructions of a permanent character, which were built according to such original monuments; and finally, as time goes on, long usage, prescription, antiquity, and reputation may be the only means of determining the true lines and boundaries; and these methods, in this order, are to be preferred " to any other evidence.     It would be most unreasonable to assume that the city engineers in 1854 did not correctly locate Milwaukee street when it was graded and

improved. It has been used and recognized by the city authorities as a public street as at present located, and has not been changed since that time. Expensive and permanent buildings have been built upon it on both sides from time to time. From these and other facts the jury were fully warranted in finding that the true and correct boundaries of the plaintiff's lot were as he claimed them to be, and that under his conveyance he owned the strip in question. This inference might well be made from the testimony, even as against stronger conflicting evidence than any that was given on the trial.

The next error assigned is that the answer to the second and third questions submitted to the jury is not full and complete, and does not dispose of the issues of fact included in said questions, arising upon the evidence, and is contrary to the law and evidence. These questions were, in substance, as to which party, plaintiff or defendants, had possession of the whole or part of the disputed strip when the alleged trespass was committed; and if there had been an actual separate possession of different parts thereof by the plaintiff and defendants and their respective grantors, then what portions had been so possessed, and the manner in which such possession was respectively taken and held. The jury found that the plaintiff had been in possession of the whole of his lot under his deed for a period of thirty years or more; that the defendants had been in possession of the lower cellar for the same period, which cellar was some twelve feet under the surface of the strip. It appears that there was quite a sharp slope on the west end of the plaintiff's lot; that a vault or cellar had been constructed by the defendants and their grantors into the slope, extending beneath the disputed strip. This cellar, though originally built without the knowledge or consent of the plaintiff, yet, as it did not interfere with the use and enjoyment of his lot, he took no steps to have removed. The

question arising upon these facts is, How were the plaint-
iff's rights in the strip affected by the construction and use
of the vault or cellar upon it? Did it operate to divest
him of the right to the soil or surface in any way? The
plaintiff's counsel claims that it did not; that, at most, the
defendants, as occupants of the vault or cellar, acquired by
prescription only an easement in the land analogous to the
right to maintain a conduit for water or a sewer under the
surface of another's land. The defendants' occupation of this
vault was not inconsistent and did not interfere with plaint-
iff's use or enjoyment of his lot over the vault, and their pre-
scriptive right to maintain such vault gave them no right
to the lot above it, or to exclude the plaintiff from its pos-
session. It is quite plain that one person may have an
easement in another's land, and that a double ownership or
possession may exist, as where one person owns land, and
another has a right of way over it, or the right to maintain
a pipe for conducting water through it, or the right to mine
under the soil and the like. In such cases, one person
owns and enjoys the surface, while another enjoys the ease-
ment, or works the mine under the soil, and these interests
may be distinct and not conflict with each other. So it
may be true, as the jury found, that the defendants had ac-
quired the right to maintain their cellar or vault on the
plaintiff's lot, but this would not give them the right to
interfere with the surface over the vault, or to disturb him
in the use of the soil above. They have no general prop-
erty in the lot, nor the proprietary interest in the real estate
itself. Their right is limited to the use and enjoyment of
the easement which they have acquired. The authorities
cited by the plaintiff's counsel clearly sustain these views,
if such elementary law needs authority to support it. The
second and third questions, therefore, submitted the testi-
mony as to this double ownership and possession of this
disputed strip. The jury fairly answered the issues in re-

gard to them. The verdict is full and complete, and is based upon sufficient evidence. There is no inconsistency in the verdict, nor anything strange or anomalous in the legal relation of the parties. The plaintiff owns the whole strip, but the defendants, by adverse possession, have acquired the right to maintain the lower cellar upon it as they have occupied it for twenty years, but nothing further than this.

The third and fourth errors assigned are the refusal of the court to submit certain questions asked by the defendants, and to give certain instructions asked on their part. As to these alleged errors, it is sufficient to say they are not before us for review. The bill of exceptions does not contain the questions nor the instructions asked by the defendants. They should have been incorporated in the bill of exceptions in order that this court might consider them. Filing these questions and instructions with the clerk did not make them a part of the record so that this court could entertain them. They should have been embraced in the bill of exceptions, together with the rulings of the court upon them and the exceptions taken to such rulings; otherwise they will not be considered. The practice on this subject has long been settled (*Reid v. Case*, 14 Wis. 429; *Cord v. Southwell*, 15 Wis. 211), and numerous decisions have affirmed the same rule.

There is the further point that the damages awarded were excessive. The jury gave $250 damages, which doubtless included some smart money. The charge of the learned circuit court upon the question of damages is quite full, and submits the case fairly upon the evidence. Among other things, the jury were told that they could only award the plaintiff actual compensatory damages unless the trespass was a wanton and wilful one; that, in determining what the actual damages were, they should not consider the value of the property, but were limited to such damages as

from the evidence they should find would compensate the plaintiff for the injury sustained; and, if he had sustained substantial damages,— that is, damages more than nominal,— exemplary damages might be given, providing the defendants had been guilty of wanton and malicious conduct. This is the tenor of the charge, which is too lengthy to be quoted entire. There was certainly proof of actual damages. The plaintiff's counsel justly says that the trespass was a most wanton, high-handed, and oppressive one, and this language is not too strong to characterize the defendants' acts, when the time, manner, and circumstances attending the trespass are considered. The defendants entered upon the plaintiff's close at an early hour of a Sunday morning, with a large force of men, and pushed their work of digging up the soil with offensive haste, against the protest of the plaintiff and in wanton disregard of his rights. We are not prepared to say that the damages are excessive, in view of their wrongful acts.

*By the Court.*— The judgment of the circuit court is affirmed.