THE COUNTRY HOMES LAND COMPANY et al., appellants,

*v.*

WILLIAM M. DEGRAY, respondent.

[Submitted March 27th, 1906. Decided November 19th, 1906.]

1. On a partition bill, if it appear that complainant's title is disputed by a co-tenant, and that the objection made is not illusory, he will be required to establish it at law before he can proceed to a decree in equity. The bill will, in general, be retained until he does so.

2. An easement works no dispossession of the owner.

3. Under the act to quiet titles, the possession essential to the jurisdiction of equity is actual as contradistinguished from constructive possession. The possession of a tenant in common in actual possession, claiming in hostility to the complainant, another tenant in common, whose title is, in part only, denied, is not, for the purposes of this act, the possession of such other tenant.

---

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Stevens, who filed the following conclusions on the hearing of the cause and on the application for a rehearing:

By his will, admitted to probate on April 17th, 1891, Richard T. DeGray devised as follows:

"All that lot of land and the buildings, erections, structures, machinery thereon and the appurtenances thereto belonging, which I have called the mill pond and mill lot, * * * and which property is now leased to or held by the Paterson Silk Dyeing and Finishing Company or Mr. Claude Greppo, I give, devise and bequeath to my son Wm. M. DeGray,

my son Richard DeGray, and my grandson, Richard D. Dater, absolutely and in equal shares, together with the said lease or leases, the reversions thereof and the rentals that may become due thereon after my death, and the benefits of the covenants thereof, subject, of course, to the said lease or leases and the covenants thereof; but I direct, and this devise to my said sons and grandson is subject to this express condition—that said property shall not be subject to partition, or be sold by my said children and grandchild, the devisees thereof, or any of them, until the expiration or sooner determination of the said lease or leases, and then shall only be sold at private auction to and among my said three devisees to the highest bidder of them (in case of the death of a devisee, his heirs-at-law or devisees of realty shall exercise his right to bid), and upon such auction and sale my executors, or the others, or survivors of them, as the case may be, shall execute a conveyance thereof in fee to such highest bidder."

Richard D. Dater died before the testator and left the two defendants Frederick H. Dater and William D. Dater.

The lease mentioned in the will gave a term of ten years to the Paterson Silk Dyeing and Finishing Company, commencing on May 1st, 1890. The testator died on April 6th, 1891.

On September 11th, 1903, Frederick H. Dater, being then of age, entered into an agreement to sell the above-mentioned lot and other property to the complainant. The agreement referred to the above-mentioned will, and required Dater, *inter alia,* at the option of the vendee, to call for a private auction; to bid for the property in accordance with its provisions, and to execute further conveyances. On October 6th, 1903, Frederick H. Dater executed to complainant a deed for (*inter alia*) an undivided one-sixth interest in the property in question. Complainant thereupon commenced this partition suit. He afterwards amended the bill by inserting in its third paragraph a clause to the effect that since its purchase "it has been and is now in the peaceable possession of the equal, undivided one-sixth interest and estate in fee-simple absolute in said tract of land and premises." On this allegation it prayed for a decree removing the cloud created by the provisions of the above devise, as well as for a decree in partition.

The question is whether the complainant is entitled to partition until a court of law has passed upon its title.

The complainant claims that the devise to Richard Dater was absolute and in law unconditioned, the restraint upon alienation

being, as he insists, void. The defendant contends that the restraint is valid, being only a partial restraint, both as it respects persons and modes of alienation and being limited in point of time.

It is entirely settled that if title to land is in dispute, and the validity or non-validity of the title claimed must be determined by the application of legal as contradistinguished from equitable rules, the complainant will be required to establish it at law before he can proceed here, but this court will, in general, retain the bill until he does so. *Vreeland* v. *Vreeland, 49 N. J. Eq. (4 Dick.) 325; Slockbower* v. *Kanouse, 50 N. J. Eq. (5 Dick.) 481.* The rule itself is not disputed, but it is said that if the court can see that there is no valid objection to the title—that the objection made is an illusory one—it may proceed to decree partition. This is doubtless true. There must be a real question, to be determined by a court of law, if the complainant is to be required to go there. But there is such a question here. Counsel differ both as to the proper construction of the clause in question and as to the law. Complainant's counsel says that the clause restrains a sale by all three devisees together, and not a transfer of his interest by one of the devisees to an outsider. Defendants' counsel says it restrains a sale *in toto,* and this latter view would seem to be more in accordance with testator's intention. I am certainly unable to say that complainant's construction is so clear that there can be no fair doubt about it. Again, the restraint appears to be limited in point of time. It would seem not to extend beyond the period of three lives in being. If it does, it does not obviously do so. This raises the question whether a general restraint, limited to a period of less than ten years, and a partial restraint, limited to a period not exceeding three lives in being, is contrary to the public policy of this state, and this question, it is admitted, has not been passed upon.

Furthermore, the partial restraint thus limited in time is also limited in respect to the mode of sale, viz., private auction, and of the persons who may buy, viz., the three devisees and their heirs. The question is whether the sale may be legally limited to a class of persons less than the whole number of possible buyers, and if so, whether the class here specified is too narrow.

The very elaborate and exhaustive briefs of counsel prove, almost to the point of demonstration, that these questions are not to be solved off-hand; that no decree can be made without a very careful consideration of them.

In *Doe* v. *Pearson, 6 East 173,* the devise was to A. and H. and their heirs, as tenants in common, on condition that in case they or either of them should have no issue, they or she having no issue should have no power to dispose of her share except to her sister or sisters, or their children. *In re Macleay, L. R. 20 Eq. 186,* the devise was "to my brother J., on condition that he never sells out of the family." Both of these devises were sustained. The elaborate opinion of Sir George Jessell in the latter is cited, and without disapproval by Chancellor Magie in *Feit* v. *Richards, 64 N. J. Eq. (19 Dick.) 16;* see, also, *Den* v. *Blackwell, 15 N. J. Law (3 Gr.) 386; Cornelius* v. *Ivins, 26 N. J. Law (2 Dutch.) 376, 385.* On the other hand, *Doe* v. *Pearson* and *In re Macleay* have been criticised both in England and America. *Gray Res. Al. ¶¶ 31, 41, 47 et seq.* Late English cases are *In re Rosher, 26 Ch. Div. 801; Dugdale* v. *Dugdale, 38 Ch. Div. 173; In re Elliot, 2 Ch. Div. (1896) 353.*

In this state of the authorities it is apparent that a real question has been raised by the answer.

But it is said by counsel that even if there be such a question, complainant's title is equitable, and that consequently this court is competent to decide it. It seems to me too clear for argument that what we are here dealing with is a legal and not an equitable title. If complainant has not a legal title, he has no title. If the restraint on alienation be bad, complainant has a perfect legal title to one-sixth. If it be good, either the attempt to alien was entirely nugatory, or else Frederick has forfeited the interest devised to him and has only that undivided one thirty-sixth to which he would become entitled as one of the heirs-at-law of the one-sixth interest so forfeited.

It is further contended that this is not only a partition bill, but one to quiet title under the act (*Gen. Stat. p. 3486*), the allegation of the bill being that complainant is in peaceable possession. It appears, as already stated, that a part of the land was leased by the testator in his lifetime to the Paterson Silk

Dyeing Company by a lease which expired on May 1st, 1900. Prior to its expiration it was renewed by the DeGrays, by Frederick H. Dater (then a minor), and by the guardian of William D. Dater, for a further term of years not yet expired. After Frederick H. Dater had executed the deed to the Paterson Silk Dyeing Company that company paid Frederick's share of the rent to complainant, although notified by the DeGrays not to do so. The contention is that the possession of a tenant for years is the possession of the owner of the freehold (*4 Kent Com. \*336*), and that consequently the complainant, being now in possession of the rents, is constructively in peaceable possession of the land, and is thus qualified to avail itself of the procedure given by the above statute. I do not think it necessary to decide whether this contention is sound, nor whether, if sound, complainant is incapacitated from suing in ejectment under our act, which extends in terms to suits brought by tenants in common (*2 Gen. Stat. p. 1285* ¶ *24*), for the rule established by our courts of last resort requiring legal questions to be solved by a legal tribunal is imperative in all cases which admit of its application. Here the tract given by the will consists of thirteen and fifty-two hundredths acres, while the land leased consists of only two and seventy-five hundredths acres, to which is attached certain water rights. The complainant has never been in actual possession of so much of the land as is not leased. The evidence shows that the DeGrays have exercised acts of ownership over that part to the exclusion of the complainant, whose title they deny. There is not the least difficulty in complainant bringing an action of ejectment in respect to that, and such an action will finally settle the question in controversy between the parties.

The defendants say that Frederick Dater's one-sixth share was given on a condition which was forfeited, and that the share went to the heirs-at-law, of which Dater is one. They admit that on this basis he is entitled to an undivided one thirty-sixth. It is obviously a case in which the bill should be retained to enable complainant to establish the title which he claims in a court of law.

Application for a rehearing has been made to me in this case

on the ground that I have misconceived both the law and the facts. The application was argued with so much apparent conviction that it seems proper, in denying it, to state, as briefly as possible, the reasons for doing so, as far as they are not stated in the opinion already written.

I think the opinion shows very clearly that the question involved is an unsettled question of title to land, and that it is a purely legal, and not an equitable question. From this it follows, as a matter of course, that it must be determined by a court of law (*Hart* v. *Leonard, 42 N. J. Eq.* (*15 Stew.*) *416*), unless the complainant is able to maintain the jurisdiction under the act to quiet titles. The jurisdictional fact, under this act, is peaceable possession. Accordingly, it is contended that peaceable possession by complainant of the entire *locus in quo* has been established by the proofs.

I say entire because there is an effort apparent throughout complainant's argument to identify the land leased to the silk dyeing company with that devised by the eleventh paragraph of Richard DeGray's will. It seems to me quite clear that the plots are not identical. The lease, in terms, demises two and seventy-five hundredths acres. The will gives thirteen and fifty-two hundredths acres, of which the two and seventy-five hundredths acres are a parcel; both parcels of land are described by metes and bounds, and those metes and bounds are wholly different. There is not the slightest difficulty in plotting them on the ground. It is true that the will inaccurately states that the plot devised is "now leased to or held by" the silk dyeing company, but this is a manifest mistake—a case for the application of the maxim *falsa demonstratio non nocet*. *Evens* v. *Griscom, 42 N. J. Law* (*13 Vr.*) *579*. It would not be for the interest of either side to contend otherwise. It is clear that this *falsa demonstratio* has no effect whatever upon the leasehold interest granted several years previously.

Now, just at this point comes in the fallacy which, as it seems to me, pervades the whole of the argument. The tenant, it is said, has attorned to complainant for an undivided one-sixth of the land because it has paid one-sixth of the rents. Possession of the rents, even against protest, is equivalent, it is said, to

actual peaceable possession of the land. Being in such peaceable possession, complainant cannot therefore bring ejectment. Conceding this argument to be sound as to the demised land, it obviously must be limited to that which is demised. This is so plain that counsel is forced to contend that the lessor in fact demised the whole of the thirteen and fifty-two hundredths acres, although he in terms demised only two and seventy-five hundredths acres. His specific contention is that because the lessor gave certain easements in that part of the thirteen and fifty-two hundredths acres not in terms demised, and particularly an easement in the water lying on and flowing through the larger tract, he really demised the whole. The cases that he cites prove just the opposite. Thus, in *Perrine* v. *Bergen, 14 N. J. Law (2 Gr.) 355,* Justice Ford says: "Even an easement works no dispossession of the owner. The possession still remains in him, as much as if the easement did not exist." And in *Burnet* v. *Crane, 56 N. J. Law (27 Vr.) 285,* an ejectment suit, the chancellor, speaking for the court of errors and appeals, says: "The right to a fee and the right to an easement in the same estate are rights independent of each other and may well subsist together *when vested in different persons.* Each can maintain an action to vindicate and establish his right," &c. This last case is conclusive authority on the point that ejectment may be brought notwithstanding the existence of an easement. Now, I am quite unable to find in the lease anything that gives more than an easement in so much of the entire tract as is not the subject of specific demise. This being so, I do not see why ejectment may not be brought in respect of the land not included in the demise. The Practice act makes provision for the case of a person suing for an undivided part. If complainant sues for an undivided one-sixth of the land not demised and is able to prove his title to it, he will have judgment. Section 24 of the Ejectment act requires the defendant, if he denies ouster, to admit the right of the plaintiff to an undivided share, *stating what share.* If the admission is made in terms satisfactory to the plaintiff, he attains the object of his suit and may then proceed with his case here. If the admission is only of a less interest than plaintiff claims, the case will be tried at law

and the court of law will determine the amount of the interest. "The plaintiff," says Justice Haines, in *Brown* v. *Combs,* 29 *N. J. Law* (5 *Dutch.*) 36, 44, "can only recover such part of the premises as his proofs have shown him entitled to, and if it appears that he is entitled to an undivided part, he shall have verdict and judgment for such part."

But the complainant says, further: We are in possession for the reason that the defendants are in possession. The possession of one tenant in common is the possession of all. Being in possession, we cannot bring ejectment. If possession always followed the title, then ejectment would not be possible as between tenants in common—a proposition, of course, untenable. The fact in this case is undeniable that aside from its constructive possession of that part which has been under lease the complainant has had no possession in fact. *Actual* possession is essential to the jurisdiction under the act to quiet titles. Said Justice Depue, in *Sheppard* v. *Nixon, 43 N. J. Eq.* (*16 Stew.*) *632:* "Under this statute, possession in fact, as distinguished from that constructive possession which in ejectment suits arises in virtue of the legal title, is essential to the jurisdiction of the court." And, further on, he says: "The defendant having in his answer made denial of possession by complainant, it was incumbent on *complainant* to establish that fact by proof." Here the complainant has not attempted to establish possession in fact of the part not demised. It has not been in the joint occupation of the land and it has not participated in the issues of it. The proofs, if they show anything, show that defendants have, as far as lay in their power, excluded complainant from the possession and refused in any way to recognize its title. Under these circumstances it seems to me that for this court to assume jurisdiction would be to disregard the rule laid down by the court of errors and appeals in *Sheppard* v. *Nixon.* As complainant's title depends upon the proper construction of the will of Richard I. DeGray, and does not appear to hinge on any disputed question of fact, it might be a convenient thing for this court to construe this will, just as it might have been a convenient thing for this court, in the first instance, to have construed the deed in the *Pipe Line Case* (*Pipe Line Co.* v. *Dela-*

ware, *Lackawanna and Western Railroad Co., 62 N. J. Law (33 Vr.) 254*), but acting under the well-settled rule it declined to take jurisdiction until the legal question was first settled. After that was done, it applied the equitable remedy. *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 57 N. J. Eq. (12 Dick.) 154; 58 N. J. Eq. (13 Dick.) 581.* No distinction has been taken in this state between questions of construction of documents and questions of fact in dispute. The court of errors and appeals has very recently applied the rule to partition cases (*Slockbower* v. *Kanouse, 50 N. J. Eq. (5 Dick.) 481*, and the chancellor, in a still later case (*Hanneman* v. *Richter, 63 N. J. Eq. (17 Dick.) 366*), had under consideration a partition depending upon the construction of a will.

I am at a loss to see why the cases cited do not apply to this case. If I am wrong in my conclusions, the court of review will have before it all the facts and can finally dispose of the whole matter.

*Mr. Preston Stevenson* and *Mr. Gilbert Collins,* for the appellants.

*Mr. John B. Humphreys,* for the respondents.

PER CURIAM.

The decree appealed from is affirmed, for the reasons stated in the opinion delivered in the court of chancery by Vice-Chancellor Stevens, on the hearing of the cause, and in the supplemental opinion delivered by him on the application for a rehearing of the cause.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.

*For reversal*—None.