GEORGE H. GEHAN v. ROBERT MORGAN AND ANOTHER.[1]

June 9, 1933.

No. 29,471.

*Baldwin Schroeder,* for appellants.
*George H. Gehan* and *L. J. Maher,* for respondent.

*HOLT, Justice.*

Action to determine the boundary line between the lot owned by plaintiff and two lots owned by defendants in Haupt's addition to St. Paul, Minnesota. Findings were in favor of plaintiff. Defendants moved for a new trial. From the order denying the motion they appeal.

The answer pleaded adverse possession since 1909 of the land in dispute. The two lots owned by defendants are lots 2 and 3 in block 1 of said addition. They are each 42 feet in width and, as indicated by the plat, are 125 feet in depth, fronting on St. Clair street on the north. The street as dedicated shows a width of 33 feet. Plaintiff's lot 4, block 1, of said addition fronts Hamline, a street running north and south at right angles with St. Clair street. This lot is also marked 42 feet wide on the plat, and its northerly

[1]Reported in 248 N. W. 820.

boundary line is common to the rear or southerly boundary line of defendants' two lots. Plaintiff's lot has been and is vacant. Defendants have held possession of their lots since 1909, it being their homestead. When they took possession there was a shed located up to what they conceived the south boundary of the lots. In line with that shed a wire fence along the south boundary of the lots has always been maintained, and use has been made by them continuously of the land north of the fence as a chicken-run or as a garden.

The court found in substance that in the original plat there was a mistake, so that the defendants' lots, instead of being 125 feet deep measuring from the St. Clair street line, are in fact only about 118 feet deep, and because thereof the fence mentioned inclosed a strip of about 7 feet of plaintiff's lot; that defendants, under an honest but mistaken belief that their lots extended the full distance of 125 feet south of the street line, held possession accordingly; and "that while said possession by the defendants was actual, it was not open, notorious and exclusive possession accompanied by some claim or assertion of title, with an intention on the part of defendants to claim adversely to the true owner, and, while such possession as they did have extended over a period of more than 15 years, it did not constitute adverse possession as to lot 4 as a matter of fact, the defendants not having any intention to claim against the true owner of said lot 4 until after the controversy arose."

In making the quoted finding the learned trial court, in our opinion, misconstrued the testimony of defendant Robert Morgan—the only witness who testified on the subject of intention to claim. On his direct examination, after testifying to maintaining the wire fence and shed on the southerly or rear line of his lot, he was asked this question:

"Now, Mr. Morgan, you have claimed all of this property that you are in possession of there as your own all of these years, haven't you?

A. "Yes. It is about 22 years."

On cross-examination by the court these questions and answers were given, which we think did not warrant the finding quoted:

Q. "When you started in fencing you didn't want to fence in anybody else's property?

A. "Not at all, sir.

Q. "You wanted to fence in only what you thought was your own?

A. "Just so."

That is the only evidence upon which an intention not to claim adversely could be predicated. In Seymour, Sabin & Co. v. Carli, 31 Minn. 81, 16 N. W. 495, the syllabus reads:

"Where one of two adjoining owners takes and holds actual possession of land beyond the boundary of his own lot or tract, under a claim of title thereto as being a part of his own land, though under a mistake as to the location of the boundary line, such possession, for the purposes of the statute, is to be deemed adverse to the true owner and a disseizin; and if the disseizor or his grantee is suffered to remain continuously in possession for the statutory period, the remedy of the former is extinguished."

That principle was followed in Brown v. Morgan, 44 Minn. 432, 46 N. W. 913; Ramsey v. Glenny, 45 Minn. 401, 48 N. W. 322, 22 A. S. R. 736; Weeks v. Upton, 99 Minn. 410, 109 N. W. 828; Kelley v. Green, 142 Minn. 82, 170 N. W. 922; Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785; Glidden Co. v. Twin City H. L. Co. 171 Minn. 160, 213 N. W. 562.

The defendant Morgan testified that he had been in possession of the property to the fence claiming it as his own for 22 years. He had built the shed on the line where the old shed was when he took possession. He had maintained a fence on the line he thought was the rear boundary. Although he honestly claimed this as his property, he was mistaken. But his honest mistake does not place him in a worse position under our decisions than if he had from the start knowingly occupied the land of plaintiff with intention to appropriate it. Any honest man would answer the questions put

by the court on cross-examination the same way as did defendant. But those answers do not detract from his direct examination that he claimed as his land up to the fence he maintained. He would not have built his shed or maintained the fence unless he claimed as his all land north of the fence. See on this point Bayhouse v. Urquides, 17 Idaho, 286, 105 P. 1066; Cassidy v. Lenahan, 294 Ill. 503, 128 N. E. 544. The cases that may seem to support plaintiff are Todd v. Weed, 84 Minn. 4, 86 N. W. 756; Kistner v. Beseke, 96 Minn. 137, 104 N. W. 759. But in the first mentioned case the court points out many facts which clearly disclosed an intention not to claim adversely. The land involved was a 40-acre tract. The possessor knew that taxes were assessed against such a description, yet he never paid them, and when informed of the plaintiff's purchase of the 40, he did not claim title; and other acts and conduct appeared which negatived the intention to claim title by adverse possession. In the Kistner case, 96 Minn. 137, 104 N. W. 759, it was the boundary line between two farmers. Both were occupying and cultivating their farms. As to part of the disputed boundary line there was a fence, and as to part there was a so-called roadway used by the one. There was much dispute as to the facts and the location of the claimed boundary. It is different in this case, for there is no dispute at all that defendants occupied exclusively and claimed as their own the land north of the fence they erected and maintained. We are of the opinion that the finding that defendants' possession did not constitute adverse possession of that part of lot 4 which lies north of defendants' fence mentioned is not sustained by the evidence.

The order denying a new trial is reversed.