EDGAR D. ROMANS AND ANOTHER v. BERTHA NADLER AND OTHERS.[1]

April 14, 1944.

No. 33,419.

[1]Reported in 14 N. W. (2d) 482.

*Asa G. Briggs* and *Edward A. Knapp,* for appellants.

*Paul C. Thomas,* for respondents.

PETERSON, JUSTICE.

The parties are the record owners of adjoining residential properties in the city of St. Paul. Plaintiffs' lot is number 2 and defendants', which lies westerly thereof, is number 3 in a certain block. Defendants appeal from the judgment (1) adjudging plaintiffs the owners "by prescription" of three portions of lot 3 presently to be mentioned and of an easement to go upon lot 3 or so much thereof as is reasonably necessary and at such times as may be reasonably necessary for the purpose of placing ladders and other equipment thereon in connection with the putting on and taking off of screens and storm windows and of cleaning, painting, and repairing on the west side of plaintiffs' house; (2) enjoining defendants from erecting any fence or structure interfering with plaintiffs' rights as established by the judgment; (3) directing defendants to remove a wire fence erected by them on lot 3 along the eastern boundary thereof under the eaves of plaintiffs' house; and (4) fixing and establishing the boundary line between the two properties.

Plaintiff Edgar D. Romans' father became the owner of lot 2 in 1898, and ever since that date plaintiffs and their predecessors in title have occupied and used the premises. Nathan Nadler became the owner of lot 3 in 1921, and ever since that time he and defendants as his successors in title have occupied and used the premises. Plaintiffs' house is close to the west line of lot 2. Their garage encroaches on lot 3. Defendants' house is a considerable distance from the line between the lots.

The first portion of lot 3 adjudged to belong to plaintiffs "by prescription" is a strip underneath the eaves of the house on lot 2. It is 49 feet long and .75 feet wide on the north and 0.9 feet wide on the south side. The evidence shows that ever since 1898 the eaves and gutters of plaintiffs' house have extended over the strip in question. According to plaintiffs' evidence, the gutters are of ample size to take care of water draining from the roof and do not drip "except under a very severe cloudburst or something of that sort which any gutter would drip over"; and that, if they get wet on the *outside,* they drip. There was no evidence that the gutters could or did become wet on the outside or that there was any dripping, except that since 1939, according to the testimony of one of the defendants, the gutters at times have discharged water on the wire fence. During all the time in question defendants have been in actual physical possession of the strip in question.

The second strip extends from the south side of the house to a point 1.85 feet west of the west line of lot 2 and 13 feet north of the alley in the rear. It is 1.85 feet wide on the north and 2.10 feet wide on the south. The evidence shows that it was fenced and occupied and has been used as part of lot 2 ever since 1924, if not prior to that time. The eaves and gutters of the garage project 2.20 feet over the south 6.8 feet of this strip.

The third strip is 13 feet long and 2.20 feet wide on the north and 2.43 feet on the south and extends from the alley to the southerly end of the fence. All of it lies underneath the eaves and gutters of the garage. The gutters have dripped on the entire area underneath during a period in excess of 15 years.

The evidence with respect to the easement is rather sketchy. It tends to show that plaintiff Edgar D. Romans and his father used lot 3 while putting on and taking off screens and storm windows once every six months. During the period from 1898 to 1941, the time of trial, the house was painted six times—about once in every six or seven years—and each time the ladders used by the painters were set on lot 3. The evidence shows that no express permission was given by defendants or their grantors for such entries. Plain-

tiff Edgar D. Romans testified that he did not think any permission was necessary, because most of the time he thought he was on his own property (lot 2) and he took for granted that he did not need permission to enter on lot 3 for the purposes mentioned, because it never occurred to him that anybody would be foolish enough to object—his words were that "anybody would object to such a foolish thing"; and because, since he never had any trouble with anybody, he would not think of asking defendants any more than he would his neighbors on the east side, some people by the name of Hartman.

The trial court established the line between lots 2 and 3 so as to include as belonging to plaintiffs all areas under the eaves and gutters of the house and the garage and the area fenced and occupied as part of lot 2. It held in effect that the projection of plaintiffs' eaves and gutters and the dripping therefrom constituted adverse possession of the parts of lot 3 underneath, which ripened into title because of its continuance for over 15 years. It also held that the uses of lot 3 for which it adjudged an easement in favor of plaintiffs had all the essentials necessary to give rise to prescriptive rights. On this appeal, the correctness of the decision below in the respects mentioned is challenged.

"Prescription" is the term usually applied to incorporeal hereditaments; "adverse possession" to lands. Abel v. Love, 81 Ind. App. 328, 143 N. E. 515. Because of the close connection between them, the terms are often used interchangeably. Mueller v. Fruen, 36 Minn. 273, 30 N. W. 886; Murray v. Scribner, 74 Wis. 602, 43 N. W. 549. We construe the word *prescription,* where the findings and judgment refer to title by *prescription,* to mean *adverse possession.*

Adverse possession of real property ripens into title in the adverse possessor or disseizor where it continues for the period allowed for the recovery of real estate, which is 15 years, under Minn. St. 1941, § 541.02 (Mason St. 1927, § 9187). There are five essentials of adverse possession. It must be hostile and under a claim of right, actual, open, continuous, and exclusive. Washburn

v. Cutter, 17 Minn. 335 (361) ; 1 Dunnell, Dig. & Supp. § 113. It must appear from the nature and circumstances of the possession that it is hostile and with intention to claim adversely, in order that the owner may be informed of it and that he may determine whether the acts consist of mere trespass or assertion of adverse title, lest he be misled into acquiescence in what he might reasonably suppose to be a mere trespass, when he would not acquiesce in the assertion of rights adverse to his title. It must be continuous, because, upon any cessation or interruption, the possession, in contemplation of law, is again in the holder of the legal title. The disseizor must not only claim adversely, but must make that fact known; or, as it is sometimes said, he must keep his flag flying. Costello v. Edson, 44 Minn. 135, 46 N. W. 299; Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060.

Occasional and sporadic trespasses for temporary purposes, because they do not indicate permanent occupation and appropriation of land, do not satisfy the requirements of hostility and continuity, and do not constitute adverse possession, even where they continue throughout the statutory period. Krueger v. Market, 124 Minn. 393, 145 N. W. 30; Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; 2 C. J. S., Adverse Possession, §§ 24, 125b. This is especially true where, as here, there is nothing about each separate trespass to indicate that it is anything but a trespass, much less an assertion of adverse right likely to be persisted in.

By the application of these rules to the facts of the case, plaintiffs acquired title by adverse possession to those parts of defendants' lot which they enclosed with the fence and occupied, Gehan v. Morgan, 189 Minn. 250, 248 N. W. 820, and which they occupied and possessed by the encroachment of the garage. Deacon v. Haugen, 182 Minn. 540, 235 N. W. 23; Seymour, Sabin & Co. v. Carli, 31 Minn. 81, 16 N. W. 495. As to these, the possession was hostile and under claim of right, actual, open, continuous, and exclusive. But, they did not acquire any title to the parts under the eaves and gutters of the house and the garage from the end of the fence to the alley, because those parts were in the actual possession of defendants. Where property is in the actual possession of the

owner, use by an adjoining owner for projection of the eaves of his building and for dripping is no basis for a claim of title by adverse possession. Randall v. Sanderson, 111 Mass. 114; Keats v. Hugo, 115 Mass. 204, 15 Am. R. 80. The entries on the part under the eaves of the house to put on and take off storm windows and screens twice a year and to paint about once in six years were occasional and sporadic only, and no title by adverse possession could be based thereon.

■ Statutes of limitation do not by their terms apply to actions involving incorporeal hereditaments such as easements. An ease-ment by prescription rests upon the fiction of a lost grant. By analogy to title by adverse possession, an adverse user of an ease-ment for the statutory period is held to be evidence of the prescrip-tive right. Mueller v. Fruen, 36 Minn. 273, 30 N. W. 886; Lehigh Valley R. Co. v. McFarlan, 43 N. J. L. 605; Jones, Easements, § 161. Subject only to such differences as are necessarily inherent in the application of the rules in such cases, the same rules of adverse user apply in cases of easements by prescription as in those of title by adverse possession. Because of such inherent differences, the same continuity of user is not required in cases of prescriptive ease-ments as in those of title by adverse possession. In cases of ease-ments, the requirement of continuity depends upon the nature and character of the right claimed. It is sometimes said that there must be such continuity of user as the right claimed permits. This statement of the rule, like the one governing cases of title by ad-verse possession, does not mean that the right can be acquired by occasional and sporadic acts for temporary purposes. If the rules of adverse user are to be maintained, there must be limits upon the extent to which the requirement of continuity of user can be relaxed. Otherwise, the rules for all practical purposes would be gone. That limit is reached where, as here, the use is only occa-sional and sporadic. "On the other hand, an occasional user for a particular purpose has been held not sufficient to sustain the right." 17 Am. Jur., Easements, § 60. The rule is supported by numerous authorities. Elyton Land Co. v. Denny, 108 Ala. 553,

18 So. 561; Pierce v. Travers, 97 Mass. 306; Burling v. Leiter, 272 Mich. 448, 262 N. W. 388, 100 A. L. R. 1312; Hughesville Water Co. v. Person, 182 Pa. 450, 38 A. 584; Zerbey v. Allan, 215 Pa. 383, 64 A. 587; Downie v. City of Renton, 167 Wash. 374, 9 P. (2d) 372; Bolton v. Smith, 26 Ont. W. R. 461.

The projection of the eaves and gutters of the house and of the garage and the dripping (such as it was) were of such a character as to satisfy the rules of adverse user, and consequently as to those portions plaintiffs acquired by prescription an easement in defendants' land to have the eaves and gutters project and to have the gutters drip. Matthys v. First Swedish Baptist Church, 223 Mass. 544, 112 N. E. 228; Neale v. Seeley, 47 Barb. (N. Y.) 314; Annotation, 58 A. L. R. 1038.

The periodical entries for putting on and taking off storm windows and screens and painting were occasional trespasses for the purposes mentioned, and consequently could not give rise to any prescriptive rights. In the Zerbey and Bolton cases, *supra,* occasional trespasses consisting of going upon another's land to put in coal and to remove ashes and garbage were held not sufficient to establish easements for such purposes by prescription. The plain reason is as was said in the Pierce case, *supra,* where it appeared that the claimant for over 30 years nailed flashboards on a dam for short periods between May and October to raise the water, which was done without injury to the meadows above the dam, and that he in a single instance refused to draw off the water at the request of the owner of a mill above the dam (97 Mass. p. 309): "Such acts are merely occasional torts, perhaps not at once resisted only because they were deemed unimportant and did but a trifling injury" to the land trespassed upon. After all, cases of this kind should be viewed with common sense. True, an owner may sue for any trivial trespass, Whittaker v. Stangvick, 100 Minn. 386, 111 N. W. 295, 117 A. S. R. 703, 10 L.R.A. (N.S.) 921, 10 Ann. Cas. 528; but not every owner wants to stand guard over his neighbors and quarrel about trivialities. It is a well-known fact that many thousands of homeowners have no boundary fences and that ad-

joining owners occasionally trespass on their neighbors' lands in cutting grass, trimming hedges, and the like. Such harmless trespasses are committed upon the well-founded assumption that ordinarily a neighbor will acquiesce in and consent to them. Such forbearances are expected of neighbors. They make for good relations between them. As said of the acts referred to in the Bolton case, such trespasses are not done with any intention of acquiring adverse rights and are acquiesced in by the owner without intending that such rights should be established. If such trespasses should be held to constitute a basis for prescriptive rights, every adjoining landowner in the cases mentioned would acquire, after 15 years, an easement in his neighbors' lands to the extent of such trespasses. This shows the absurdity of allowing an easement in such cases. Under such circumstances, something more than such occasional uses of land should be required to give rise to prescriptive rights. The trespasser should be required to show by some additional acts that the entry is hostile and under claim of right, and thus run up his flag of hostile claim, so as to warn the owner that, if he acquiesces, adverse rights will be established against him. The case of Dunbar v. O'Brien, 117 Neb. 245, 220 N. W. 278, 58 A. L. R. 1033, is cited contra. In that case the use was continuous, for the court found that the plaintiff there "continuously" trespassed on defendant's land for the purpose of painting the former's house, washing windows, and making necessary repairs. Here, there was no continuity of use; the trespasses were sporadic and occasional. Insofar as the cited case announces a different rule than here announced, we refuse to follow it.

■ Rights of prescriptive easement in land are measured and defined by the use made of the land giving rise to the easement. As has been said, an easement is an incorporeal hereditament. It is a servitude imposed upon corporeal property, and it gives no title to the land upon which it is imposed. An easement, whether it is a right to use the surface or a space above or below it, does not carry with it title to or right of possession of the land itself. Lustmann v. Lustmann, 204 Minn. 228, 283 N. W. 387; McMillian

v. Lauer, 24 N. Y. S. 951; Koenigs v. Jung, 73 Wis. 178, 40 N. W. 801; Country Homes Land Co. v. DeGray, 71 N. J. Eq. 283, 71 A. 340; 28 C. J. S., Easements, §§ 73, 74; 17 Am. Jur., Easements, §§ 96, 100. In the Lustmann case we said (204 Minn. p. 231, 283 N. W. p. 388): "The acquisition by prescription of a right of way does not exclude use by the owner of the land or by the public." In Koenigs v. Jung, *supra,* it was held that a prescriptive right to maintain a cellar under land belonging to·another did not include any rights in the surface of the land. The court said that the right to maintain the cellar under the surface did not carry with it the right to interfere with the surface over the cellar and that the owner of the easement had (73 Wis. 182, 40 N. W. 803) "no general property in the lot, nor the proprietary interest in the real estate itself." The owner of a prescriptive easement, to have the eaves of his house project over the land of another, is entitled only to an easement and not to title to the land itself. Keats v. Hugo, 115 Mass. 204, 15 Am. R. 80, *supra;* Jones, Easements, § 170. Of course the same is true of an easement to drip. See Randall v. Sanderson, 111 Mass. 114, *supra.* The case of Weeks v. Upton, 99 Minn. 410, 109 N. W. 828, does not sustain the proposition for which it is cited, *viz.,* that an easement carries with it title to the land. In that case, not only the land under the eaves, but an additional strip of land, was adversely *possessed* and *used* by the party claiming title thereto. There was no claim of easement at all in that case, but one of title to the land by adverse possession. If there had been adverse possession of the land under the eaves here, which there was not, the Weeks case would be in point.

Defendants have the undoubted right to maintain the fence erected by them on their land beneath the eaves and gutters projecting from plaintiffs' house. They have the right to erect and maintain thereon a structure which does not interfere with plaintiffs' easement. "Of course, the owner of the house acquires only an easement and not a title to the land of such other person under the eaves and cannot prevent him from building on that land, if he can

do so without interfering with the eaves." Jones, Easements, § 170, citing Keats v. Hugo, 115 Mass. 204, 15 Am. R. 80, *supra*.

Our conclusion is that the judgment is correct insofar as it holds that plaintiffs acquired title by adverse possession to the parts of defendants' lot enclosed by the fence and upon which the garage encroaches, and that it is erroneous insofar as it holds that plaintiffs acquired title to any other part of defendants' land and an easement therein for the purpose of entering with ladders and other equipment for the purpose of putting on and removing storm windows and screens and painting the plaintiffs' house. Plaintiffs are entitled, however, to easements in defendants' land to have the eaves and gutters of the house and the garage project and to drip. The line between the two lots should be run so as to give plaintiffs only those parts of defendants' lot to which we hold they have acquired title by adverse possession. Apparently the distances given in the judgment do not correspond with those in the findings. Discrepancies, if any, can be corrected upon the going down of the remittitur. It was error to direct defendants to remove the fence, which they erected. The judgment should be amended in accordance with the views expressed in the opinion.

Reversed with directions to amend the judgment in accordance with the views expressed in the opinion.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the evidence reasonably sustains the court's finding that plaintiffs had acquired an easement by prescription to go onto lot 3 "at such times as * * * reasonably necessary, for the purpose of placing ladders and other equipment thereon in connection with the putting on and taking off of screens and storm windows on the west side of plaintiffs' said dwelling house, and for the purpose of cleaning, painting, and repairing said windows and house."

Plaintiff Edgar D. Romans testified that ever since 1898 his father and other occupants of lot 2, including himself, have gone onto lot 3 twice a year to put on or remove storm and screen windows on their dwelling house, placing ladders thereon at such times and

for such purposes, and that they have gone thereon once every six or seven years for the purpose of painting and repairing their dwelling house, likewise using ladders in connection therewith at such times. He testified further that from the time defendants erected the wire fence on the boundary line and forbade him to go onto lot 3, he has been unable to remove or wash most of the storm windows, to put on the screens, or do painting and make repairs on the west side of his dwelling house; that there was no way of doing this work without going onto lot 3. He was able to put on or remove, from the inside, a few smaller windows. His testimony in this respect was corroborated by his wife, plaintiff Ada J. Romans.

He testified further that he had at no time received permission from anybody to use lot 3 for the purposes indicated and that he at all times had claimed the right to use lot 3 for such purposes; that he had taken it for granted that he had such right and had asked nobody's permission; that defendants, subsequent to the erection of the wire fence in 1939, had ordered him to cease using lot 3 for such purposes.

Defendants Anna and Adell Nadler both testified that they had at no time seen plaintiffs place ladders on their property or otherwise use it for the purposes indicated. Defendant Adell Nadler testified that on one occasion Edgar D. Romans had spoken to her about placing a ladder on lot 3 in order to paint his house, but she did not disclose whether she had granted or denied him permission for this purpose. She further testified that subsequent to such conversation she had not seen any ladders placed thereon by plaintiffs. No further testimony was submitted by defendants to indicate that plaintiffs or their predecessors had ever received permission to use lot 3 for the purposes described.

It would seem that the foregoing is amply sufficient reasonably to sustain the trial court's findings with respect to such easement. All the necessary elements to establish an easement by prescription are present to support the claim of plaintiffs. A similar situation was presented in the case of Dunbar v. O'Brien, 117 Neb. 245, 250, 220 N. W. 278, 280, 58 A. L. R. 1033, where plaintiff

claimed an easement permitting access to the west wall of her house and the use of an adjoining strip of ground for the purpose of painting, washing windows, and making necessary repairs. Therein the court stated:

"In the present case there is evidence tending to prove the following facts: Plaintiff's house was standing in its present location as early as 1898. For more than ten years [the prescribed statutory period in Nebraska] continuously thereafter owners or occupants of plaintiff's lot had access from the front to defendant's lot and used a narrow strip on the east side of it for the purpose of painting, and washing windows. This use was open, notorious and peaceable without permission of the owners, and after 1925 was first interrupted by defendant, who purchased his lot in 1912 and went into possession in 1913. The easement was continuously exercised by plaintiff and former owners or occupants of her house. On the contrary, there is testimony tending to prove that there was no path in the passageway claimed by plaintiff; that owners of defendant's lot did not have notice at any time that a portion of his lot was used adversely by plaintiff and former owners or occupants of her lot; that any such use was permissive, and not adverse. While the evidence on this issue is conflicting to some extent, the preponderance seems to be in favor of plaintiff, whose easement was acquired before defendant purchased his lot, and not subsequently lost. Defendant testified in effect that the husband of plaintiff requested permission for workmen to make repairs on the west side of her house, but this did not amount to an abandonment of the easement or to an admission that it had no existence. A courteous request by a neighbor for such permission, directed to the owner of the fee, did not necessarily disprove an existing right to enter without it. It is clear that the necessary use of the passageway for plaintiff's purposes would not wear a path. After the easement was legally acquired, notice of its continuous use was unnecessary. In the decree below the trial court confined the easement to the ground under the eaves. The evidence shows that stepladders were used, and they seem to be necessary. Their use ob-

viously requires more ground than that covered by the eaves. The width of the easement is determined by necessity, and not by convenience. The former use of a strip to the extent of three feet in width seems to be reasonable and should be protected. The easement does not give plaintiff any right to the fee or to annoy defendant or to litter or injure his lot or to enter his premises for any purpose other than to wash windows, to insert and remove screens, to paint, and to make necessary repairs."

For other illustrative cases, see 28 C. J. S., Easements, § 20.

The evidence seems reasonably clear in the instant case that the use for the purposes indicated was without the owner's consent and under claim of right. In any event, under our decision in Merrick v. Schleuder, 179 Minn. 228, 230, 228 N. W. 755, 756, it would seem that defendants had the burden of establishing that the use was not hostile but with their permission and consent. In that case it was stated:

"In the absence of grant, the argument for defendants runs, the user should be considered as having originated in permission or license and so cannot be considered adverse. Without any excursion into the wilderness of authority on the subject, it is sufficient to refer to the rule, well established in this state in accord with the weight of authority elsewhere, that 'where the claimant has shown an open, visible, continuous and unmolested use' for the required period inconsistent with the owner's rights and under circumstances from which may be inferred his knowledge and acquiescence, the use will be presumed to be under claim of right and adverse so as to place upon the owner the burden of rebutting this presumption by showing that the use was permissive. Swan v. Munch, 65 Minn. 500, 67 N. W. 1022, 35 L. R. A. 743, 60 A. S. R. 491; Stapf v. Wobbrock, 171 Minn. 358, 214 N. W. 49, and cases there cited. The presumption follows from the evidence for plaintiffs concerning the nature and extent of their user. If there is evidence rebutting it, it is not of the character necessary to justify us in disturbing the adverse finding."

No evidence was submitted by defendants here to show that plaintiffs had received permission to use the land as described. Under such circumstances, it would seem that the evidence reasonably sustains the trial court's findings with respect to this particular easement. Certainly there is no evidence of the character necessary to justify us in disturbing said finding.

[1] Reported in 14 N. W. (2d) 410.