| 215 | 383 |
| 215 | 393 |

# Zerbey, Appellant, *v.* Allan.

*Equity—Equity practice—Opinion—Findings of fact and law—Equity Rule 62.*

Where an opinion in an equity case is arranged in a clear and orderly way, and the facts and law are considered separately, the decree based upon the opinion will not be reversed because the findings of fact and law are not set forth in separate and numbered paragraphs as provided by Equity Rule 62.

*Equity—Equity practice—Review.*

The appellate court will not reverse a final decree in equity because the court did not sit in banc to pass upon the exceptions, where on the face of the decree it appears to have been made "By the Court" and not by an individual judge.

*Easement—Merger—Extinguishment of easement.*

Where there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish the easement on the servient estate absolutely and forever, for the reason no man can have an easement in his own land.

*Deed—Description—Courses and distance.*

Where land is sold according to a plan of lots, and a deed for one of the lots shows that a course was evidently omitted, the missing course may be shown from the description in the deed for the adjoining lot.

*Easement—Right of way—Express grant—Permissive use.*

An express grant of the use of a stable yard for access to the rear of adjoining premises is a privilege personal to the owner of such premises, and does not enure to the benefit of adjoining owners.

Where a user is with the knowledge and acquiescence of the owner of the land traversed, and is under his leave, favor and permission, and at his will, no title by prescription can arise,

Argued Feb. 12, 1906. Appeal, No. 221, Jan. T., 1905, by plaintiff, from decree of C. P. Schuylkill Co., Nov. T., 1904, No. 5, dismissing bill in equity in case of J. H. Zerbey v. William L. Allan, Clyde G. Allan and Louisa M. Allan. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was in dismissing the bill.

*Samuel H. Kaercher,* with him *Daniel W. Kaercher,* for appellant.—The opinion violated Rule No. 62 : Schmidt v. Baizley, 184 Pa. 527 ; Gaynor v. Quinn, 212 Pa. 362; Jones v. Weir, 213 Pa. 135.

The decree was only heard by one judge : Myers v. Consumers' Coal Co., 212 Pa. 193.

If the dominant and servient tenements become vested in the same owner, by the common law, the easement is extinguished by unity of title; by the civil, the servitude is lost by confusion ; but it is but the name that is gone, the right remains under a higher title.

Upon a subsequent severance of the estate, by alienation of a part the alienee becomes entitled to all continuous and apparent easements, which have been used by the owner during the unity of the estate, and which are necessary for the enjoyment of the several parts : Kieffer v. Imhoff, 26 Pa. 438.

The easement being both apparent and continuous was not extinguished by merger, in consequence of the unity of possession in the two joint owners who had purchased subject to it and had maintained its use ; it could not therefore be closed without the consent of all the owners of lots bounding on it : Ferguson's App., 117 Pa. 426 ; Hall v. McCaughey, 51 Pa. 43 ; Lindeman v. Lindsey, 69 Pa. 93 ; McKee v. Perchment, 69 Pa. 342 ; Horn v. Miller, 136 Pa. 640 ; Gardner v. Weaver, 11 W. N. C. 544 ; Seibert v. Levan, 8 Pa. 383 ; Watson v. Bioren, 1 S. & R. 227 ; Wissler v. Hershey, 23 Pa. 333 ; Plitt v. Cox, 43 Pa. 486.

*R. A. Koch,* for appellees.

OPINION BY MR. JUSTICE POTTER, May 24, 1906:

This is an appeal from a decree dismissing a bill in equity filed for the purpose of enjoining defendants from excavating and building upon an alleged right of way in the rear of plaintiff's premises.

Plaintiff and defendants are the owners of adjoining properties situate on the south side of Mahantongo street in the borough of Pottsville. Defendants' property, on which a hotel building is erected, is on the southwest corner of Mahantongo and Center streets, extending westwardly along the former street ninety-nine feet nine inches to the line of plaintiff's property, which extends thirty feet seven inches further westward. On the east side of plaintiff's lot is a covered alleyway eleven feet seven inches wide and forty feet in depth. Defendants have the right to use this alleyway in common with the owners and tenants of other portions of the property in the same square formerly owned by Samuel Sillyman. Plaintiff's lot is forty feet in depth and is built up to the rear line adjoining other ground of defendants. This ground has long been used as part of a hotel yard and for a stable shed, but defendants are now preparing to erect upon it an addition to their hotel and have begun excavating for that purpose. Plaintiff alleges that he has a right of way over eleven feet seven inches of ground immediately adjoining his present building to the south, and also to a way over a piece of ground of the same width and length adjoining the southern end of the alley leading from Mahantongo street.

As it appears from the testimony that plaintiff has no entrance to his building from the rear, and makes no use of the alleged right of way, the purpose of this bill is manifestly to prevent the obstruction of his windows by the wall of defendants' new building. In the bill as filed by plaintiff he based his claim upon an alleged continuous and adverse user for thirty years and upward, but that claim was abandoned, both in the court below, and upon the argument in this court, and the case for the plaintiff is rested entirely upon the covenants contained in the record evidence.

The first assignment of error suggests that the trial judge did not follow Equity Rule 62. It is true that he did not state the findings of fact and law, in separate and numbered para-

graphs, as is the usual and better practice. But the opinion is arranged in a clear and orderly way, and the facts and law are considered separately. The findings of the court can be readily ascertained, and each request for findings was answered fully and directly.

The second assignment complains that the court did not sit in banc, to pass upon the exceptions. But on the face of the final decree, it appears to have been made "By the Court" and not by an individual judge. The only inference that we can draw from the record is, that the conclusion reached was that of the court, and not merely the judgment of an individual member thereof.

But turning to the merits of the question raised by this appeal, it appears that when Samuel Sillyman conveyed the present hotel property to Gaius Moore, on May 1, 1830, his deed described it as extending in depth from Center street 100 feet and bounded southwesterly by a twelve feet wide alley, for a distance of eighty-one feet to another twelve feet wide alley, leading eastward into Center street. It is claimed that this alley is still appurtenant to all subdivisions of the tract owned at that time by Sillyman, including plaintiff's property.

Sillyman afterwards, in 1845 and 1846, became the owner of the entire tract and continued to own it until 1859. During that time he divided it into seven different lots, as appears from the recitals in the deed of John P. Hobart, sheriff, to John Hughes, which refers a number of times to "Samuel Sillyman's map or plan." In 1859 the entire tract was levied upon and sold by the sheriff under a judgment against Sillyman. The property was advertised, sold and conveyed by the sheriff according to Sillyman's map or plan dividing it into seven parts. All the lots were purchased by John Hughes, who thus became owner of all the ground that Samuel Sillyman had owned. On October 1, 1859, Hughes conveyed the hotel property to William Matz, describing it as extending westwardly from Center street along the south side of Mahantongo street ninety-nine feet nine inches and giving the grantee the right to an alley leading southwardly from Mahantongo street, eleven feet seven inches wide and forty feet in length, said right to be enjoyed in common with the owners and tenants of other property in the same square formerly

owned by Samuel Sillyman.   On  January  15, 1864, Hughes
conveyed the property now owned by plaintiff to  John  Silly-
man, plaintiff's predecessor in title, subject to the right in the
alleyway previously granted  to  Matz.   Hughes had  also con-
veyed ground on  Center  street to Bright &  Lerch, with the
privilege of an entrance from Mahantongo street.   See Bright
v. Allan, 203 Pa. 386.

It is claimed by appellant that although the easement created
by laying out the twelve feet wide  alley  in 1830 may have be-
come merged in the fee, when Samuel Sillyman  became the
owner of both in  1846, nevertheless, when Sillyman's title was
divested by the sheriff's sale,  and the  purchaser  sold various
portions of the land to different persons, the easement was re-
vived and inured to the benefit of all portions of the  original
tract, including appellant's property.

But when both  the  dominant and servient estates became
vested in the same person, they merged, and the easement was
extinguished.   Sillyman being then the  owner  of the  entire
estate, without its being subject to any easement or  servitude,
made a division of it into lots, as he had a perfect right to do,
but whether or not he provided for any alley leading from Ma-
hantongo street does not appear, as the plan itself has not been
found.   The sheriff sold according to  this plan, without men-
tioning any alley, and Hughes, the purchaser at sheriff's sale,
took the same estate in the entire tract as  Sillyman  had  held,
subject to no easement whatever, unless it was an apparent
one.   When Hughes conveyed to Matz, he created a new ease-
ment over what was then his own ground, the  present alley-
way eleven feet seven inches wide  and  forty feet in  length.
Neither Sillyman nor Hughes ever did anything which in-
dicated an intention to revive the right to the twelve feet wide
alley mentioned in the deed to Gaius Moore.

" Where there is a union of an absolute title to and possession
of the dominant and servient estates in the same person, it oper-
ates to extinguish any such easement absolutely and forever for
the single reason that no man can have an easement in  his
own land: " Washburn on  Easements  and  Servitudes (4th
ed.), * 518.

" The effect of again separating the ownership of these estates
in reviving these easements varies essentially according  to the

nature and character of these easements. In some cases the law, in order to give effect to a grant, restores the former easement to the estate granted, while in others this can only be done by express terms in the deed. And whether an easement shall revive or not upon the alienation of one of the estates, may depend upon the act of the owner while holding both: " Washburn on Easements and Servitudes, * 522.

The same author in chap. V. sec. 2, * 523, considers at length the effect of conveying one of two estates in reviving former easements: His conclusion is that the easement is not revived, unless it is natural, like the flow of water in a natural stream, or (* 524) " necessary to the enjoyment of the one parcel or the other, as in the case of ways; though by making the new grant in such a case, it is rather the creation of a new right of way by implication, than the reviving of a former one, and ways thus created are appurtenant only so long as the necessity continues." No testimony appears which shows that the use of the twelve feet wide alley was apparent and continuous during the time Sillyman held title.

Appellant argues that appellees have failed to show title to the ground immediately in the rear of his property, because in the sheriff's deed to John Hughes the courses and distances mentioned for lot No. 2 (the hotel property), if plotted, will not include that ground. This is true, and it is also true that these courses and distances cannot possibly be exactly followed. The last course reads " Thence northwardly parallel with Mahantongo street 134 feet 9 inches." But Mahantongo street runs east and west, and a line extending northwardly could not be parallel with it. The prior course was parallel with Mahantongo street, so this one would not be. If the line were extended parallel to Mahantongo street the description would not close.

Defendant's witness A. B. Cochran, the surveyor, explains the discrepancy by saying that a course is evidently omitted, and he supplies the missing course from the description of note No. 4, which makes the description of No. 2 sensible and covers the entire hotel yard. The subsequent deed from Hughes to William Matz describes the ground in a different manner, starting from the corner of Center and Mahantongo streets, and bounding the entire yard, closing around without any trouble.

The same description is followed in the subsequent conveyances.

An examination of Cochran's plan and a comparison with the sheriff's deed, shows that it is correctly made and the omitted course is properly supplied. It was manifestly the intention of the sheriff to sell all the ground belonging to the defendant in the execution, not to leave a strip in the middle of the square unsold. Matz and his successors in title took possession of this ground, erected a stable and shedding upon it and have used it for the purposes of their business from that day to this.

The last position taken by appellant he does not make clear. Having abandoned the claim set up by his bill of a right of way in the rear of his own premises acquired by prescription, he now appears to claim an easement in the entire hotel yard in common with the other owners of ground abutting upon it. This claim is sought to be established by evidence (1) that the yard has been constantly used by Bright & Lerch and their customers as a passageway to and from the rear of their store, and (2) that at various times in the past the occupants of the properties abutting on the yard have used it for the purpose of access to the rear of their premises, putting in coal, removing ashes, etc., that way, and in the case of the post office receiving mail through the yard.

The use of the yard for access to the store of Bright & Lerch was under an express grant from John Hughes of a right of entrance from Mahantongo street and was a privilege personal to Bright & Lerch and their grantees; see Bright v. Allan, 203 Pa. 386. It could not inure to the benefit of appellant.

The court below found that " The use of the ground, according to the testimony of Mrs. Drumheller, widow of Jesse Drumheller (and daughter of William Matz), as well as according to the testimony of other witnesses for both complainant and respondent, was clearly a permissive use and was not continuous and uninterrupted."

If the use of a way is merely a permissive use, no presumption of grant can arise from lapse of time; in order to establish such right, the user must be adverse, not permissive: Demuth v. Amweg, 90 Pa. 181.

Where the use is with the knowledge and acquiescence of

the owner of the land traversed, and is under his leave and favor, and at his will, no title by prescription can arise : Root v. Com., 98 Pa. 170.

" The occasional exercise of a power over the lands or property of another during a period of twenty-one years is not enough to make title by prescription or limitation.    The exercise of the power must be continuous, uniform and adverse.    The occasional theft of a timber tree from the lands of one's neighbor could not, no matter how long continued, confer a right on the thief to take away a timber tree at his pleasure.    If, however, he goes upon his neighbor's land and remains in open, continuous, adverse possession for the requisite time, he will acquire title to the land and the timber upon it.    There must be something to call the attention of the owner to the adverse claim, such as an invasion of the possession of land, the assertion adversely to himself of a right, and the like : " Hughesville Water Co. v. Person, 182 Pa. 450, 453.

It appears from the evidence that the ground immediately in the rear of appellant's building has not been used by him since that building was erected in 1895, there being no rear entrance. For a number of years there has been a carriage shed, erected and used by the owners of the hotel, immediately south of appellant's line which was in constant use by the patrons of the hotel.    By the testimony of defendant's witness Quinn, the shed was erected in 1886 or 1887.

We think the conclusions reached by the court below, are fully justified by the evidence contained in the record.    None of the specifications of error are sustained, and this appeal is dismissed at the cost of appellant.