## Carney v. Albani

*Paul V. Mahoney*, for plaintiff.

*Thos. A. Waggoner, Jr.*, for defendant.

MORROW, J., April 13, 1950.—Plaintiffs aver ownership of certain lots in a recorded plan and defendants ownership of two other lots in this plan; that a 15-foot strip of land was reserved for road purposes, extending inside and along the northerly boundary line of the two lots of defendants, the strip along lot 106 being involved in this suit; that a 10-foot alley extends along the northerly boundary line of this lot, making an alleged reservation in all for a 25-foot roadway, to furnish the means of ingress and egress to plaintiffs' lots; that defendants have completely obstructed the use of the 15-foot strip, making dangerous the travel on the narrow 10-foot alley, also alleged to be slightly obstructed in places; that plaintiffs have been maintaining and repairing this alley at their own expense. Plaintiffs aver that if defendants are to continue obstructing this roadway they will suffer irreparable injury and pray for a mandatory injunction requiring defendants to remove the obstruction and allow plaintiffs free travel over the reservation. A rule

was granted to show cause why the injunction should not be issued.

The answer of defendants admits ownership of the lots and avers that the fence complained of by plaintiffs (the fence along the northerly line of lot 106 adjoining the 10-foot alley) has been in its present location for 31 years or more, and was there when plaintiffs became the owners of the property described in the bill as belonging to them, and they aver that they have done nothing to hinder plaintiffs' enjoyment of their property and ask dismissal of this action.

### Findings of Fact

1. Hillman-Neff Coke Company under date of August 2, 1916, had recorded a Plan of Lots in German Township, Fayette County, Pa., in Plan Book No. 4 at page 46. On this plan are shown, inter alia, lots numbered 100 to 106 inclusive, and a lot adjoining and west of lot 106, designated lot A, all bounded on their northerly side by a straight line marked on the plan as running "N. 73° 18½' E." On the plan is shown a dotted line parallel with this boundary line and 15 feet southerly therefrom. Lot B on the plan adjoins lot A on the westerly side of lot A. On lots B and A, for the most part on lot A, is this lettering: "15 Feet Reserved For Road Purposes" and an arrow on lot A points to this 15-feet wide strip of land indicated as between the dotted line and the northerly boundary line.

2. Unity Street, shown on the plan, runs in an easterly and westerly direction but not parallel with the 15-foot strip of land, the easterly part of this street being about 175 feet north of the easterly end of the 15-foot strip. The westerly end of Unity Street, 35 feet wide, comes to the northeasterly corner of lot 106, and narrows down from that corner until it forms what is designated in plaintiffs' bill as a 10-foot alley, being of this width along lots 82 and 83, now owned by

defendants, situate on the northerly side of the alley, lot 82 being north across the alley from lot 106, owned by defendants, and lot 83 being on the alley west of and adjoining lot 82.

3. Unity Street and the 10-foot alley into which it narrows at the westerly end is the traveled way of approach to the properties of defendants and plaintiffs and to other lots in that part of the plan. There was no extension of this alley into the property of plaintiffs prior to the year 1940.

4. No part of the 15-foot strip of land has ever been used in any way as a road nor has any road ever been constructed thereon, it being treated as parts of the respective lots through which it runs. That part of the strip within the property lines of defendants' lot 106 is the only part thereof involved in this suit. Neither that part of the 15-foot strip, nor any other part of the strip for its entire length has ever been opened to, or used by, the public and much more than 21 years has elapsed since the recording of the lot plan on August 2, 1916. Defendants, owners of the part involved in this suit, do not and have never consented to the use of their portion by anyone as a roadway nor has it ever been so used, nor has it been proved that any other portion of the strip east of defendants' portion has ever been so used.

5. Lot 106 was conveyed by Hillman-Neff Coke Company to George Bertorech and Ecilia Bertorech, his wife, by deed dated April 4, 1917, recorded September 25, 1917, in the Recorder's Office of Fayette County in Deed Book, vol. 368 page 140, by description as follows:

"All that certain lot, piece or parcel of land situate in German Township, Fayette County, Pennsylvania, being lot No. 106 in Plot or Plan of Lots surveyed, laid out, adopted and dedicated by the party of the first part and recorded in the Recorder's Office of

Fayette County in Plan Book No. 4, page 46; the said lot being situate on the south side of a 10 foot alley and bounded on the north by a 10 foot alley, on the east by lot No. 105, on the south by land of Joseph Cover, and on the west by land of Hillman-Neff Coke Co., and being a part of the same premises conveyed to the party of the first part by Hillman-Neff Coke Company by deed dated the 28th day of February, 1916, and recorded in the Recorder's Office aforesaid in Deed Book Vol. 253, Page 70.

"EXCEPTING AND RESERVING thereout and therefrom all the coal, oil, gas and other minerals, with the right to mine and remove the same without liability for damages and without being required to provide or leave support for the overlying strata or surface, or to the springs, wells, cisterns, or water courses therein or thereon by reason of mining and removing the same, or by reason of mining and removing coal and minerals adjacent thereto, or by reason of manufacturing into coke this or other coal and with the right to make, maintain and use tracks, roads and ways in and through the said mines for transportation and drainage of said coal and of coal and minerals and supplies and other things from and to other lands.

"Together with all and singular the improvements, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said party of the first part in law, equity or otherwise howsoever, of, in and to the same and every part thereof, except as aforesaid.

"To have and to hold the said lot, piece or parcel of land, hereditaments and premises hereby granted or mentioned and intended so to be, with the appurten-

ances unto the said parties of the second part, their heirs and assigns, to and for the only proper use and behoof of the said parties of the second part, their heirs and assigns forever.

"And the said party of the first part does by these presents covenant, grant and agree to and with the parties of the second part, their heirs and assigns, that it, the said party of the first part, all and singular the hereditaments and premises hereinabove described and granted or mentioned and intended so to be, with the appurtenances, unto the said parties of the second part, their heirs and assigns, against it, the said party of the first part, and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend."

The deed is a general warranty deed, describes the entire lot No. 106, and makes no reservation or mention of the 15-foot strip of land. It mentions the lot as bounded on the north by a 10-foot alley, which alley is the narrowed extension of Unity Street.

6. George Bertorech bought this lot 106 from the company in 1914, a few months before he married his wife Ecilia, but this deed was made to both of them after their marriage, as stated in the preceding finding of fact. At the time they lived there from 1914 on until they sold the property in 1917, a fence was along the northerly boundary line of lot 106, and the fence was there at the time George Bertorech bought the property in 1914. The location of this fence line down to the present time has been continuously the same. This fence line is substantially the same as the northerly property line of lot 106.

7. George Bertorech and Ecilia Bertorech, his wife, by deed dated September 22, 1917, recorded September 25, 1917, in Deed Book, vol. 359, at page 428, conveyed lot 106 to defendant, Joe Albani, by the same descrip-

tion as recited in the preceding fifth finding of fact, with this addition to the description: "upon which there is erected a frame dwelling." The deed recites the property conveyed as being the same conveyed to the first parties by the deed recited in the fifth finding of fact.

8. Plaintiffs are the owners of lots no. 69, 70, 82 and 83 in the plan of lots, acquiring title by deed of Hillman Coal and Coke Company, dated June 8, 1945, and recorded February 26, 1948 in Deed Book, vol. 653, page 125. Lots 82 and 83 are conveyed by this description:

"PARCEL No. 2. Lots Nos. 82 and 83 situate in German Township, Fayette County Pa. BEGINNING at a point on the southerly line of a 15 foot alley at the dividing line between Lot No. 81 and Lot No. 82; thence by said Lot No. 81 south 32 degrees 35 minutes east, a distance of 107.93 feet *to a 10 foot alley*; thence by said alley, south 73 degrees 18 minutes 30 seconds west, a distance of 101.24 feet to a point; thence by same, north 37 degrees 40 minutes west, a distance of 82.45 feet to the southerly line of the 15 foot alley aforementioned; thence by said alley, north 57 degrees 25 minutes east, a distance of 104.68 feet to the place of beginning. CONTAINING an area of 0.2210 of an acre.

"The above described property is conveyed subject to the lien of all easements, if any, upon so much thereof as abuts on any public or private streets, roads or alleys, and is subject to all existing easements of every kind and nature, whether the same be or be not recorded, or be or be not visible upon the surface of said property."

9. Plaintiffs are the owners of an unnumbered lot designated as lot A, conveyed to them by Hillman Coal & Coke Company by deed dated July 1, 1946, and re-

corded February 26, 1948, in Deed Book, vol. 653, page 129, by the following description:

"ALL that certain piece or parcel of land situated in German Township, Fayette County, Pennsylvania, bounded and described as follows: BEGINNING at a point at the northwesterly corner of Lot No. 106 in the Hillman-Neff Plan of Lots as laid out by the Hillman-Neff Coke Company and recorded in the Recorder's Office of Fayette County, Pennsylvania, in Plan Book Vol. 4, page 46; thence along said Lot No. 106, south 16 degrees 42 minutes East, a distance of 109.00 feet to a point; thence along land now or formerly of Joseph Cover, South 73 degrees 57 minutes 30 seconds west, a distance of 152.66 feet to a point; thence along land now or formerly of Paul Carney, north 16 degrees 42 minutes west, a distance of 107.22 feet to an iron pin; thence along land formerly of Serafino Cinci, North 73 degrees 18 minutes east, a distance of 152.65 feet to the place of beginning. Containing 0.3788 of an acre."

10. Plaintiffs by deed of Serafino Cinci et ux., dated October 16, 1940, recorded November 17, 1942, in Deed Book 498, page 375, were conveyed a triangular piece of land, designated as lot C, which lot lies at the northerly end of the 10-foot alley, or extension of Unity Street, by the following description:

"ALL that certain piece or parcel of land situate in German Township, Fayette County, Pennsylvania, bounded and described as follows, to-wit: BEGINNING at an iron pin at a corner common to land of the grantor and land of the Hecla Coal & Coke Company, said iron pin being also the northwesterly corner of the 0.2811 acre tract of land conveyed by deed, dated June 15, 1936, from the Hecla Coal & Coke Company to Paul Carney; thence through land of the grantor, of which this parcel was formerly a part, North 63 degrees 42 minutes 20 seconds east, a distance of 224.08 feet to

a stake on the westerly side of an alley in the Hillman-Neff Plan of Lots; thence by the westerly side of said alley, South 37 degrees 40 minutes east, a distance of 40.00 feet to a stake on line of land of the Hecla Coal & Coke Company and being also the intersection of the westerly side of the aforesaid alley with the southerly side of another alley in the aforementioned Hillman-Neff Plan of Lots; thence along land of the Hecla Coal & Coke Company and the northerly line of the aforementioned Paul Carney 0.2811 acre tract, South 73 degrees 18 minutes west, a distance of 235.25 feet to the place of beginning. CONTAINING an area of 0.1009 of an acre."

11. The title of plaintiffs to lot B, where they live, was acquired June 15, 1936, by deed of Hillman Coal and Coke Company, recorded November 17, 1942, in Deed Book, vol. 581, page 252. Lot B is described in this deed as follows:

"All that certain piece of land situate in German Township, Fayette County, Pennsylvania, bounded and described as follows, to-wit: BEGINNING at an iron pin in the dividing line between the property of the Hecla Coal & Coke Company and Serafino Cinci, formerly Simeon Stillwell, which iron pin is north 73 degrees 18 minutes east, a distance of 238.65 feet from the northwest corner of the property purchased by the Bessemer Coke Company from Melissa Harvey on February 28, 1905; thence along Cinci's land and the northern line of the property purchased from said Melissa Harvey, north 73 degrees 18 minutes east, a distance of 115.00 feet to an iron pin; thence at right angles thereto through said property, south 16 degrees 42 minutes east, a distance of 107.22 feet to a point on line of land of Joseph Cover; thence along said Cover's land, south 73 degrees, 57 minutes 30 seconds west, 115.01 feet to a point; thence through property purchased from said Melissa Harvey, north 16 degrees 42

minutes west, 105.90 feet to the place of beginning. Containing in all 0.2811 of an acre.

"BEING part of the same property which Melissa Harvey, by deed dated February 28, 1905, and recorded in the Recorder's Office of Fayette County, Pennsylvania, granted and conveyed unto Bessemer Coke Company, and which latter company by Agreement of Consolidation and Merger dated November 28, 1917 and recorded in the Recorder's Office of Fayette County, Pennsylvania in Agreement Book Vol. 34, page 198 became merged into the Hecla Coal & Coke Company, Grantor herein.

"The above property is conveyed subject to the lien of a public easement, if any, upon so much thereof as abuts on the public roads and alleys and subject to all existing easements, whether recorded or not, and of every kind of nature."

12. The 10-foot alley mentioned in the deed to defendant Joseph Albani, recited in the seventh finding of fact, and mentioned in the deed to defendant's grantors, recited in the fifth finding of fact, as bounding lot 106 on the north is as now opened and in use by actual measurement at its narrowest point along the lot slightly in excess of 10 feet in width.

13. The fence or hedge, as maintained by defendants, has been unchanged in location during the past 25 years and more without encroachment on the 10-foot alley, and defendants have continued during all the period with the enclosure as their own of that portion of the 15-foot wide strip of land that constitutes the northerly 15 feet of lot no. 106.

14. The 15-foot strip of land involved in this suit has been unchanged and has comprised part of defendants' home property since their purchase thereof September 22, 1917, recited in the seventh finding of fact, and the kitchen of their home is on a part of the strip, it coming to within about eight feet of the fence line

on the northerly property line of lot 106, and the sidewalk along the house occupies some three or four feet of this eight-foot space.

## Discussion

The real question involved in this suit is whether plaintiffs have the right to have the 15-foot strip of land constituting the northerly part of defendants' home property thrown open and become a part of the roadway into their property. All of this strip has been fenced in and occupied continuously as a part of lot 106 since the predecessor in title to defendants first purchased the property in 1914, securing a deed therefor September 22, 1917. The effect of the recording of the plot August 2, 1917, with a notation thereon of the reservation of 15 feet for road purposes, as recited in the first finding of fact is for consideration. Plaintiffs offered no evidence that German Township ever accepted this plan and assumed any responsibility for the opening or maintaining of any of the streets and alleys shown thereon. It does appear that no part of this 15-foot strip of land constituting the northerly part of lot 106 has ever been used as a roadway as aforesaid and this strip of land on east from the lot to the end thereof has never been thus used. The plot was recorded August 2, 1917, and this suit was not begun until September 1948, a lapse of 31 years, during all of which time, and for some time prior to the recording of the plot, all of lot 106, including the strip constituting the northerly part thereof, has been in the exclusive possession of defendants and their predecessors in title, and a part of the dwelling house was built on a portion of the strip. The first land shown in the plot that was purchased by plaintiffs was acquired by deed dated June 15, 1936, recorded November 17, 1942, as recited in the eleventh finding of fact. The fence enclosing defendants' lot 106 on its northerly property

line had been erected more than 21 years before the date of plaintiffs' deed and was continuously maintained thereafter in the same location. The three other later deeds to plaintiffs were in the years 1940, 1945 and 1946. The one of these three deeds that is recited at the ninth finding of fact is for lot A, lying immediately west of and adjoining lot 106 of defendants. It will be observed that the description in this deed for lot A specifically states:

"Beginning at a point at the northwesterly corner of Lot No. 106 . . . thence along said Lot No. 106, south 16 degrees 42 minutes east a distance of 109 feet to a point."

No mention is made of any reservation with respect to a 15-foot strip. The point of beginning is at the northwesterly corner of lot no. 106 and the distance along that lot is 109 feet which includes the 15 feet now alleged to have been reserved for road purposes. There is no suggestion whatsoever that such a roadway actually existed. Applying language in the opinion of the Superior Court in Hogan v. Burneson, 44 Pa. Superior Ct., 409, 415, plaintiffs were bound to take notice of the fence, improvements and possession of the land in question, and they never acquired any title, possession or right of possession to the land that was fenced in by Albani.

The question whether plaintiffs have a right to demand that this 15-foot strip be now used for road purposes seems to be answered by the case of Shallcross v. Scott, 9 Del. Co. 560, decided October 6, 1905, where the facts seem very similar, but the position of the litigants is reversed. Their position would have been the same had plaintiffs here, instead of bringing suit, notified Albani, defendant, that they intended to open the alleged 15-foot roadway by force, and Albani had sought the injunction to restrain them from so doing. In that case plaintiff averred that prior to his ac-

quiring the title and possession of the premises upwards of 25 years before the Sharon Land Association undertook to lay out their lands into town lots and prepared a plan thereof showing a certain 10-foot wide alley extending northwardly from Spring Street through and across the premises of plaintiff; that this alley was never opened or dedicated to public use, nor accepted by any public authority, and that the soil over which it was laid out by the Sharon Land Association has at all times since 1876 been inclosed and used and occupied by plaintiff to the exclusion of every other person. Also that defendant (corresponding to plaintiffs here) had purchased certain lots formerly owned by the Sharon Land Association and claims the right to open the alley, and has notified plaintiff that he intends to open the alley by force. The prayer was for a decree restraining this proposed action. The court said:

"The bill avers that the plaintiff is the owner of certain lands—that more than twenty-one years ago the Sharon Land Association undertook to lay out certain land in town lots, prepared a plan showing a certain ten feet wide alley extending through and across the plaintiff's lands—that the alley was never opened or dedicated to public use nor accepted by public authority, and that since the year 1876 has at all times been enclosed and used by the plaintiff.

"By the Act of Assembly of May 9th, 1889, P. L. 173, it is provided: 'Any street, lane or alley laid out by any person or persons in any village or town, lot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been or shall be laid out.'

"There is sufficient in the bill to entitle the plaintiff to relief."

In Yeakle v. Nace, 2 Wharton 123, it is held: "Twenty-one years occupation of land, adverse to a right of way, and inconsistent with it, bars the right." And in Jessop v. Kittanning Borough (no. 2) 225 Pa. 589, we find: "Occupation of land for twenty-one years adverse to a private right of way, and inconsistent with it, bars the right." See also Zerbey v. Allan, 215 Pa. 383, and Woodbury v. Allan, 215 Pa. 390.

It seems reasonable to conclude from an examination of the lot plan that the 15-foot road reservation was for some road purpose then contemplated separate and apart from the 10-foot alley and not an enlargement thereof. The alley runs along the northerly line of this road reservation for only a short distance, the width of three small lots, then turns almost directly north, leaving the line of the road reservation, and continues on north as a *10-foot* alley, whereas the road reservation runs on in both directions, easterly and westerly, extending easterly about 800 feet. This road purpose or plan, whatever it may have been, evidently was abandoned since the proposed road was never opened and the land embraced therein has been continuously in the exclusive possession of the respective owners of the lots through which the road was to have passed.

### Conclusions of Law

1. Plaintiffs do not have a legal right to require defendants to open up for use as a roadway any portion of lot No. 106 that lies on the southerly side of the fence along the 10-foot alley bounding the lot on its northerly side.

2. Plaintiffs do not now have a right to use as a roadway any portion of the 15 feet marked on the lot

plan as reserved for road purposes that lies east of lot A shown on the plan.

3. Plaintiffs' bill should be dismissed.

4. The costs should be paid by plaintiffs.

### Decree Nisi

And now, April 13, 1950, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows.

1. Plaintiffs' bill in this case is dismissed.

2. Plaintiffs shall pay the costs herein.

The prothonotary shall enter this decree nisi and give notice to the parties, or their counsel of record, of the entry of the decree, and if no exceptions are filed within 10 days this decree nisi shall be entered as the final decree herein by the prothonotary, as of course.